Filed 3/3/23  Mendoza v. Martinez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHANIE MENDOZA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JOEY C. MARTINEZ et al.,<br><br>Defendants and Respondents. | B314778<br><br>(Los Angeles County<br>Super. Ct. No. BC620761) |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Green, Judge.  Affirmed.

Law Offices of Michael N. Berke and Michael N. Berke; RCM Legal and Roy C. Manukyan for Plaintiff and Appellant.

Diem Law and Robin L. Diem; Johnson Oakleaf and Wade C. Johnson for Defendants and Respondents.

————————————————

Stephanie Mendoza appeals from an order denying her motion to amend a judgment to include alleged alter egos. Mendoza obtained a judgment against RBD Real Estate Development, LLC (RBD, LLC), and later sought to amend the judgment to add Renovations Builders & Developers, Inc. (RBD, Inc.) and Joey Martinez, the principal of both RBD, LLC and RBD, Inc., as alter ego debtors.

Mendoza primarily contends that the trial court misapplied the controlling legal principles in denying her motion to amend the judgment to include Martinez as an alter ego debtor. She also contends that the trial court failed to consider evidence of the unity of interest between RBD, LLC and RBD, Inc. For the reasons described below, we find no reversible error and thus affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The lawsuit and stipulated judgment

On May 27, 2016, Mendoza filed a complaint against Martinez and RBD, LLC. The complaint alleged several causes of action, including breach of contract, breach of fiduciary duty, and fraud. The complaint alleged that Martinez, on behalf of himself and RBD, LLC, solicited funds from Mendoza to help develop parcels of real property. According to the complaint, Martinez borrowed money from Mendoza to avoid defaulting on payments owed to contractors and suppliers, and made promises to her, later broken, to induce her financial assistance.

For example, the complaint alleged that Mendoza loaned Martinez money in reliance on his promise to make her a partner in the development projects, to include her name on the title to the properties being developed, and to execute promissory notes

2

and deeds of trust in her favor to secure repayment of the loans. The complaint further alleged that Martinez did not follow through on any of those promises.

On December 7, 2016, Mendoza, Martinez, and RBD, LLC filed a stipulated judgment in favor of Mendoza and against RBD, LLC in the amount of $285,923.96. The stipulated judgment also provided that Martinez "shall be dismissed as to all causes of action with prejudice."

Although Mendoza was able to collect $29,095.79 pursuant to a writ of attachment on RBD, LLC's bank account, she was unable to collect the remainder of the judgment. Then, in June 2017, RBD, LLC filed a certificate of dissolution signed by Martinez with the California Secretary of State. As described below, Mendoza attempted to collect the remainder of the judgment by enforcing a writ of attachment against a property formerly owned by RBD, LLC, but that effort was unsuccessful.

## II.  Motion to amend the judgment and opposition

### A.  Mendoza's motion to amend the judgment

In September 2019, Mendoza conducted a judgment debtor exam of Martinez. Martinez testified that RBD, LLC was created at the request of investors who helped finance his development of properties on Goldenrod Avenue and Isabella Terrace in Corona Del Mar. RBD, Inc. was Martinez's general contracting company which, at least according to Martinez's deposition testimony, "had nothing to do with the development of either property."

Martinez testified that after RBD, LLC dissolved in June 2017, RBD, Inc. repaid investors who had loaned money in connection with the Goldenrod and Isabella properties. When asked why Mendoza had not been repaid for her payment to

3

RBD, LLC, Martinez responded, "Because she hasn't contacted me."

Martinez was also questioned about certain payments involving him, RBD, LLC, and RBD, Inc. For example, Martinez acknowledged that RBD, LLC had written checks to RBD, Inc. totaling more than $60,000, but he was unable to explain their purpose. RBD, LLC also paid for Martinez's son's college tuition, but Martinez could not explain why, other than noting that his children worked for him. When presented with several checks to a law firm from RBD, LLC, which included Martinez's son's name on the memo line, Martinez was unable to identify their purpose. RBD, LLC also paid Martinez's son to prepare architectural plans even though his son was unlicensed to do so. Another check appeared to show that RBD, LLC paid for RBD, Inc.'s contractor's license fee.

Martinez also produced RBD, LLC's bank records, which showed that its account was often overdrawn or had a low operating balance.

Based on this information, Mendoza filed a motion to amend the judgment against RBD, LLC to add Martinez and RBD, Inc. as alter ego debtors. She included her declaration and the declaration of her then-counsel, Dana Leigh Cisneros.

Mendoza's declaration explained that although Martinez had assured her in text messages in March 2016 that he would "make good on [his] side" and would "not forget what [Mendoza] did for [him]," he had not repaid any of what he owed her. She also explained that, as noted, she was able to collect only $29,095.79 from the bank account of RBD, LLC pursuant to a writ of attachment issued at the start of her lawsuit.

4

Cisneros's declaration explained that a writ of attachment had issued on the same day that Mendoza filed her lawsuit in May 2016, which thereafter attached to the Goldenrod property.[1] But after the writ was issued, Martinez and RBD, LLC transferred the Goldenrod property to a third party who brought an action to remove Mendoza's lien. That action concluded with a settlement agreement requiring Mendoza to release her lien on the Goldenrod property.

Cisneros's declaration also included the transcript and exhibits from Martinez's judgment debtor exam.

Mendoza's motion argued that amendment of the judgment was warranted because Martinez owned and controlled both RBD, LLC and RDB, Inc.; held himself out as liable for RBD, LLC's debts and caused RBD, Inc. to pay creditors of RBD, LLC after it had been dissolved; commingled assets of the two companies; treated the assets of RBD, LLC as his own; and had undercapitalized RBD, LLC.

## B.    Martinez's and RBD, Inc.'s opposition

Martinez and RBD, Inc. opposed the motion and included a declaration from Martinez and their counsel, Wade Johnson.

Martinez's declaration explained that he was the president and sole shareholder of RBD, Inc., which was a licensed general building contractor. As he explained at his deposition, Martinez

---

[1]    Although not addressed in Cisneros's declaration, as discussed herein it appears the Isabella property was foreclosed upon prior to Mendoza recording her pre-judgment writ of attachment.

5

formed RBD, LLC at the request of lenders[2] for the purpose of taking title to the Goldenrod and Isabella properties. Martinez was also a guarantor on the notes for the purchase money for both properties.

According to Martinez, Mendoza and her business partner agreed to purchase the Isabella property for $150,000 plus the balance on the loans for the property, and to take possession of the property and pay the mortgage as rent until the sale was closed. Despite their agreement, Mendoza and her partner were unable to obtain financing for the purchase and stopped paying rent on the property in January 2016.

Martinez sold the Goldenrod property in July 2016, before he had knowledge of Mendoza's lawsuit. The Isabella property was sold at auction in November 2016. Because Martinez was personally obligated for the deficiency, he had been making payments on the deficiency since that time.

When Martinez agreed to the stipulated judgment, he understood that Mendoza "would be looking solely to the Goldenrod Property for compensation." Because there was no longer any purpose for RBD, LLC, and it had no assets, he thereafter caused it to be dissolved.

Johnson's declaration explained that he was counsel for Martinez and RBD, Inc. According to Johnson, after he was engaged to represent Martinez he had settlement discussions with Mendoza's counsel. During those discussions, Johnson and Mendoza's counsel learned the Isabella property had been foreclosed upon prior to the recording of Mendoza's writ of

---

[2] Martinez explained that he had mistakenly referred to the lenders as "investors" during his debtor exam.

6

attachment and that the Goldenrod property had been sold subject to Mendoza's attachment lien.

According to Johnson, the parties agreed to the stipulated judgment with the understanding that Martinez would be dismissed with prejudice, that Mendoza would have the money she collected from RBD, LLC's bank account, and that she would try to collect the balance of the judgment from her lien on the Goldenrod property. But after judgment was entered, the new owners of the Goldenrod property successfully sued to have Mendoza's lien equitably subordinated to their title.

Martinez and RBD, Inc. opposed Mendoza's motion to include them as judgment debtors on several grounds. Among other things, they contended that Martinez had been induced not to defend the lawsuit by Mendoza's promise to dismiss him and collect the judgment against RBD, LLC; that RBD, Inc. should not be included as a judgment debtor because it had no duty to intervene and defend the allegations in the lawsuit; that it would be inequitable to allow Mendoza to include Martinez as a judgment debtor after she had dismissed him with prejudice; and that Mendoza failed to show that Martinez had improperly commingled assets or undercapitalized RBD, LLC.

## III. Evidentiary hearing

After the parties filed supplemental briefs, the court held a two-day evidentiary hearing on Mendoza's motion to amend the judgment.

### A. February 24, 2021 hearing

At the start of the hearing, the court and counsel discussed the factual background of the case, including the events leading

to Mendoza's inability to enforce her lien on the Goldenrod property.

During their discussion, the court observed, "Now, I see it, because when I was reading this, I thought that we're talking more of a fraudulent transfer or something more slight [*sic*.] of hand, but apparently not." A short time later, the court asked the parties, "So what do you see is the issue?" Counsel for Mendoza replied, "The question is, was the judgment capable of being enforced at the time it was made? And our position, it's not. There was no value in anything. Even the writ of attachment had no value, so—because there was no equity."

The court responded, "But isn't that why we hire lawyers? . . . . [¶] But, you know, ordinarily, if there was—why would you enter into a judgment if there's a stipulated judgment with both parties agreeing to this, if there was no way it could be fulfilled? You know, that—you sort of take a risk. [¶] I mean, that tells me that maybe her case wasn't as strong as, you know, I might think. And maybe this was the best deal that counsel at the time could get, and then you roll the dice and see if you can get anything out of it."

Later during the same discussion, counsel for Martinez emphasized that when the parties were negotiating the stipulated judgment, Mendoza's counsel was in communication with the title company that insured the title on the Goldenrod property. According to Martinez's counsel, his "file [was] full of e-mail correspondence" between Mendoza's counsel and the title company "discussing the merits of their claim against [the title company], that took place prior to the judgment, the stipulated judgment. There is nothing that wasn't disclosed."

Mendoza then called Martinez as a witness. Martinez explained that he was the principal in both RBD, Inc. and RBD, LLC, and that he formed RBD, LLC to take title to the Goldenrod and Isabella properties. Mendoza and her partner later agreed to purchase the Isabella property by refinancing an existing loan on the property, to pay Martinez $150,000 as a sale profit, and to pay the mortgage on the property until they could obtain financing. But the transaction fell apart after Mendoza was unable to acquire financing. By then, Mendoza had paid Martinez a total of $250,000, approximately $130,000 of which was rent. Martinez characterized the remaining $120,000 as "hard money."

Martinez also described several other loans he obtained related to the Isabella and Goldenrod properties, and his efforts with Mendoza to secure financing for those properties. But in November 2016 one of his lenders foreclosed on the Isabella property and acquired title.

At the end of the first day of the hearing, the court noted that its prior impression of the case was that "Ms. Mendoza went and gave money to Mr. Martinez to invest in property." However, the court observed that Mendoza was "an active participant, and this just didn't work out. And, you know, now, . . . the settlement [makes] a little more sense. But if everybody knew it was going on, and there were evaluations of the strength and weakness of the cases, and it just didn't work out, it's hard for me to find a way to say that, as a matter of law, that Mr. Martinez should be added to the judgment."

The court further stated that "one of the main reasons for piercing a business veil and having individual liability is that injustice will result, if that isn't—if that isn't done. [¶] And it's

9

hard here to say that there's an injustice, if everybody knew, or their agents knew, maybe Ms. Mendoza didn't appreciate the legalities or maybe her lawyer didn't tell her or maybe her lawyer didn't know. But unless you point to something that is nefarious here, it could be very hard to say that injustice will result if I don't add Mr. Martinez to the judgment."

The next day, Martinez's counsel filed a declaration attaching correspondence between him, Mendoza's counsel, and the title company. The correspondence between Mendoza's counsel and the title company, occurring prior to the entry of the stipulated judgment, indicates the title company disputed Mendoza's ability to enforce her lien against the Goldenrod property.

### B. April 20, 2021 hearing

At the second day of the hearing, the court stated that it was "trying to understand where the fraud is." It likewise emphasized that it "was wondering what did Mr. Martinez do or say that was a misrepresentation or fraudulent? . . . Let's face it. It is odd to apply alter ego to a settlement."

Later, the court said to Mendoza's counsel, "I'm trying to understand what Mr. Martinez did that was dishonest. What did he do that fooled the lawyer and fooled your client?" The court stressed that "if [Martinez] had looted the company the day before the judgment and then the company was a shell and he misrepresented the assets of the company, then I agree with you. I absolutely agree with you, but I'm saying this is the kind of thing which I look for in an alter ego. [¶] You know, where is the lying and cheating?"

The court also stated that "what makes this thing so odd, it appears to be a fully negotiated settlement. I mean, fully

10

negotiated with emails going back and forth between multiple lawyers involved.  [¶]  Unless you can show me that Mr. Martinez engages in sleight of hand, I see no reason to disrupt this settlement.  It's a bargained-for deal."

Martinez then continued his testimony.  Among other things, he explained the purpose of the payments from RBD, LLC to RBD, Inc., which he was asked about during his debtor exam. He testified that the payments were for construction services provided by RBD, Inc. to RBD, LLC.  He also acknowledged that RBD, LLC's tax returns reflected an income of $76,443 in 2016, and a loss of $3,451 in 2017.

That testimony then prompted the court to observe the absence of evidence that Martinez misled Mendoza about the finances of RBD, LLC.  The court stated, "So did [counsel for Mendoza] ask [counsel for Martinez] for the books?  I mean, if I were her counsel and we were negotiating and I had my client in negotiation—especially cutting loose the principal and instead having some businesses as the part of the cash cow, I would want to see what the balance was up to and as close to December of 2015 as humanly possible.  [¶]  Then, suddenly, if in January 2017, it all vanished, then I might have a fraudulent conveyance or a fraud.  But, I mean, there's simply no evidence here that I have seen that [counsel for Mendoza] asked that question or that [counsel for Martinez] misled [her]."

After some additional discussion, Martinez testified that he dissolved RBD, LLC because he "wasn't using it anymore." Although he intended to continue developing properties, Martinez believed that RBD, LLC's reputation had been tarnished in connection with the foreclosure of the Isabella property.

11

At the conclusion of Martinez's testimony, counsel for Martinez pointed out that Martinez was a guarantor on the purchase money loans for the Isabella property, which explains why RBD, Inc. had been repaying the loans after RBD, LLC dissolved.

Mendoza testified next. She explained that she and her business partner invited Martinez to be a partner in their real estate development firm because Martinez had construction experience. Mendoza thereafter wrote checks and paid cash to Martinez to cover outstanding mortgage payments and construction costs related to the Isabella and Goldenrod properties. She understood that in exchange for her payments, once the Isabella and Goldenrod properties sold she would share in the profit and recoup her investments.

The court then observed that "Ms. Mendoza is a sophisticated businessperson. She brought a partner into her firm, it sounds to me like, without doing any due diligence at all, and the firm is now paying these expenses for a fellow partner on firm property. [¶] Am I wrong on that?" Mendoza's counsel replied, "No."

Mendoza also described further efforts by her and Martinez to develop the Isabella property and other properties. But by April 2016, Mendoza said the communications between her and Martinez "broke down." She attempted to meet with Martinez to discuss repayment of her investments, but she never heard back from him.

Mendoza then described the circumstances surrounding the settlement of her lawsuit against Martinez and RBD, LLC. At that time, she was aware only of RBD, LLC, not RBD, Inc. Her counsel advised her that Martinez and RBD, LLC would release

12

the funds attached in RBD, LLC's bank account, and that she could "go after his development company, RBD, LLC. And I had no idea that that was not a company that was going to continue doing what it did in Corona Del Mar." Regarding the Goldenrod property, she was advised "that since title blatantly missed my lien, that that would be one avenue that we could pursue, but it was not the only avenue. It was never advised that it was the only avenue." She also testified that she was unaware that the Isabella property "had gone under and went into default." Last, she explained that following the entry of the stipulated judgment against RBD, LLC, she was sued by the title company regarding her lien on the Goldenrod property. The litigation with the title company lasted two years.

## C. Court's ruling

The court issued an oral ruling at the conclusion of the second day of hearing. Because the court's subsequent minute order does not contain the court's reasoning, and because Mendoza's appeal focuses on the court's statements during the evidentiary hearing, we include the court's pertinent statements at the conclusion of the hearing:

"It sounds to me, as I said, that [Martinez and Mendoza] had made an atrocious series of business deals that sank them. And I don't see any documentation, partnership agreement, or any sort of agreement, which would make Mr. Martinez liable for this. I mean, you bring in partners, and sometimes they work out, and sometimes they end up being a nightmare. . . .

"But, you know, be that as it may, Mr. Martinez, for whatever reason, decided to settle. And then the question was what were the expectations of the parties as to why there was

13

going to be a settlement and why these specific terms, how it was going to be paid. . . .

"I mean, the deal that the prior counsel had is very clear when you read the emails with [Martinez's counsel]. It's very clear what the deal was. The expectations were that Ms. Mendoza apparently had no illusions as to how deep Mr. Martinez's pockets were and that the terms of the settlement reflect the strengths of the case.

"I mean, as I said, I don't understand the liability Mr. Martinez had to that firm. The liability would be to the firm. I don't understand what that liability would be, which explains partly why they held out for having him dismissed with prejudice. . . . .

"And then they go after the property in Corona Del Mar, Goldenrod. And certainly prior counsel had a theory whereby— and she was pretty sure of herself, and she may be right. You think she was right all along. She may have been right, but the judge didn't buy it, and that happens. It happens when you get involved in lawsuits, and there were, you know, title companies and whatever.

"And everything was known up front. Everything was known up front. I read through the emails, and I think the day before the settlement, they had an email from the title company that told—. . . . [¶] [Mendoza's counsel]—you know, telling her to pound sand; they're referring it to outside counsel for litigation. And knowing that, the plaintiff went ahead with the deal. That's the deal. And, frankly, it's sort of reflected in the merits of the underlying case.

"It would not be fair, as I understand it, to add Mr. Martinez back into the case after there was a negotiated

settlement whereby he was dismissed with prejudice, and where I feel that negotiated settlement reflected the merits of the underlying case.

"So I've never heard of an alter ego case where you bring someone in who has been dismissed with prejudice, especially here where it reflects ongoing extensive negotiations."

Later, counsel for Mendoza asked to address the relationship between RBD, Inc. and RBD, LLC. The court responded, "Yeah, but I don't see—that's only important if there was some fraud here. If he emptied these corporations with the intent to deprive Ms. Mendoza of the ability to satisfy the judgment, and you know, I don't see that. There were six months whereby Ms. Mendoza could have gotten to the entity and tried to satisfy it, but she didn't."

Following further discussion, the court stated: "But, you know, what makes this case so unusual is that the lead defendant, the person who has the ability to go out and make money, was dismissed with prejudice. That's what makes it so odd and, frankly, makes it so difficult to bring him back into the case when the parties reached a negotiated settlement to the contrary. [¶] You know, I don't know what more I can say."

Last, the court stated, "I've seen these alter ego cases, and we see them actually more than you might realize after verdicts. And the ones that I have are the ones where there's been, you know, some degree of lying, cheating, stealing, and equity demands that we disregard this entity so the victim can be made whole.

"But, again, what makes this—I hate to say it over and over again because I've never seen it. This a case where the

15

person you want to bring back into the case has been, after extensive negotiation, dismissed with prejudice.

"I've just never seen that. So I mean, it's an interesting case, no question about that. But I don't see it. Frankly, I don't think it's a close case. I just don't think it's a close case. He was dismissed with prejudice, and now I see why. [¶] . . . [¶]

"Okay. Look guys, that's my decision."

The court's minute order dated the same day states, in relevant part: "The Court will not add Joey Martinez into this action."

## IV. Motion for reconsideration

Mendoza filed a motion for reconsideration pursuant to Code of Civil Procedure section 1008, or in the alternative, to obtain a ruling on her motion to amend. She noted that the court's April 20, 2021 minute order addressed her request to add Martinez as a judgment debtor, but not RBD, Inc.

On June 24, 2021, the court held a hearing on Mendoza's motion, but the transcript of the hearing is not part of the record. That same day, the court issued a minute order denying the motion for reconsideration and stating that the "Order on Plaintiff's [m]otion to amend judgment to add alter egos Joey Martinez and [RBD, Inc.] to judgment is signed, filed and incorporated herein." It also signed and filed the order denying Mendoza's motion to add Martinez and RBD, Inc. as judgment debtors. On June 28, 2021, the court clerk served a copy of the June 24, 2021 minute order on the parties.

Mendoza filed a notice of appeal on August 13, 2021.

16

## DISCUSSION

Mendoza raises several challenges to the trial court's decision denying her motion to amend the judgment. First, she contends the court erred by weighing the merits of her claims against Martinez and her subsequent dismissal of Martinez with prejudice. Second, she contends the court erred by requiring her to show evidence of fraud or wrongful intent by Martinez or RBD, LLC. Last, she contends the court erred by failing to consider the evidence of unity of interest between RBD, LLC and RBD, Inc.

Martinez and RBD, Inc. (hereinafter respondents) contend that Mendoza's appeal is untimely, that the trial court's order is supported by substantial evidence, and that the court did not commit legal error. They also contend Mendoza forfeited and waived her appeal.

## I.    Timeliness of appeal

Because the timeliness of Mendoza's appeal is a jurisdictional issue, we address that issue first. (See *Drum v. Superior Court* (2006) 139 Cal.App.4th 845, 849.)

Mendoza's notice of appeal states that she appeals from an order entered on June 24, 2021. As noted earlier, the court issued two orders on that date: a minute order denying Mendoza's motion for reconsideration and denying her motion to amend the judgment, and a separate signed order denying her motion to amend the judgment. According to respondents, Mendoza's notice of appeal concerns only the denial of her motion for reconsideration, because the court's April 20, 2021 minute order had already denied Mendoza's motion to amend the

17

judgment.[3]  Respondents further contend that Mendoza's notice of appeal is untimely under California Rules of Court, rule 8.108(e), which concerns the time to appeal where a party "serves and files a valid motion to reconsider" an appealable order under Code of Civil Procedure section 1008, subdivision (a).  (Cal. Rules of Court, rule 8.108(e).)

We conclude that Mendoza's appeal is timely.  If we construe Mendoza's notice of appeal as an appeal from the June 24, 2021 order denying her motion to amend the judgment—the most logical conclusion given the sequence of events in the trial court—her notice of appeal was timely.[4]  That is because the shortest possible deadline for Mendoza to have appealed that order was 60 days from June 24, 2021, and she filed her notice of appeal on August 13, 2021.  (See Cal. Rules of Court, rule 8.104(a)(1).)

---

[3]  Mendoza counters that the April 20, 2021 minute order denied her request to add Martinez as a judgment debtor, but left unresolved her request to add RBD, Inc. as a judgment debtor. She thus contends that her subsequent motion, although styled in part as a motion for reconsideration, was in effect a motion to obtain a final ruling.  She further argues that the resulting June 24, 2021 order should be treated as the court's initial order on her motion to amend the judgment, not an order denying her motion for reconsideration.  We need not address this argument because, as discussed herein, we find the appeal timely even with respect to the April 20, 2021 order.

[4]  The parties do not dispute that an order denying a motion to amend a judgment to include alter ego judgment debtors is an appealable order.  (See *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1071 [order denying motion to amend judgment to add alter ego judgment debtor is appealable].)

18

But even if we assume, as respondents contend, that the court had already denied Mendoza's motion to amend the judgment on April 20, 2021, and that the court's June 24, 2021 order only concerned her motion for reconsideration, we would still conclude that her appeal is timely. We take several steps to reach that conclusion.

The order denying Mendoza's motion for reconsideration was not a separately appealable order. (See Code Civ. Proc., § 1008, subd. (g) ["An order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable."]; *Chango Coffee, Inc. v. Applied Underwriters, Inc.* (2017) 11 Cal.App.5th 1247, 1254 ["we conclude an order denying a renewed motion under [Code of Civil Procedure] section 1008, subdivision (b) is nonappealable"].) Nonetheless, we must liberally construe a notice of appeal in favor of its sufficiency if doing so would not prejudice a respondent. (See *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20 [construing notice of appeal from nonappealable post-judgment order as encompassing underlying appealable judgment].)

We find that respondents would not suffer prejudice if we construed Mendoza's notice of appeal as encompassing the court's April 20, 2021 minute order denying Mendoza's motion to amend the judgment. Indeed, the court's June 24, 2021 minute order clearly addressed Mendoza's motion to amend the judgment, stating that the "[o]rder on Plaintiff's [m]otion to amend judgment to add alter egos Joey Martinez and [RBD, Inc.] to judgment is signed, filed, and incorporated herein . . . ." Also, the parties have focused their briefs on the merits of the court's ruling denying Mendoza's motion to amend the judgment.

19

Furthermore, Mendoza's notice of appeal is timely with respect to the April 20, 2021 minute order. The record fails to indicate that either the court clerk or a party served a "Notice of Entry" of judgment or a filed-endorsed copy of the April 20, 2021 minute order, which would have triggered a 60-day deadline to file a notice of appeal. (See Cal. Rules of Court, rule 8.104(a)(1)(A)–(B).) Mendoza therefore had 180 days to appeal the court's April 20, 2021 order, i.e., until October 18, 2021.[5] (See Cal. Rules of Court, rule 8.104(a)(1)(C).) Hence, her August 13, 2021 notice of appeal was timely.[6]

## II. Applicable law and standard of review

"The trial court is authorized to amend a judgment to add judgment debtors. [Citation.] The judgment may be amended to add additional judgment debtors on the ground that a person or entity is the alter ego of the original judgment debtor. [Citation]

---

[5]   180 days from April 20, 2021, was October 17, 2021. That was a Sunday, so Mendoza had until the following day to appeal. (See Code Civ. Proc., §§ 10, 12.)

[6]   Respondents' reliance on California Rules of Court, rule 8.108(e) is misplaced. That rule extends the time to appeal if "any party serves and files a valid motion to reconsider an appealable order" under Code of Civil Procedure section 1008, subdivision (a). (See Cal. Rules of Court, rule 8.108(e).) But California Rules of Court, rule 8.108 "operates only to extend the time to appeal otherwise prescribed in rule 8.104(a); it does not shorten the time to appeal." (Cal. Rules of Court, rule 8.108(a).) Because we have concluded that Mendoza's appeal is timely under California Rules of Court, rule 8.104(a), we need not reach respondents' argument regarding the timeliness of Mendoza's appeal under California Rules of Court, rule 8.108(e).

It is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. [Citation.] The decision to grant an amendment lies in the sound discretion of the trial court. [Citation.] Great liberality is allowed in granting such amendments." (*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 815 (*Relentless*).)

To prevail in a motion to add judgment debtors, the moving party must show that "(1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone." (*Relentless, supra*, 222 Cal.App.4th at pp. 815–816.)

"Factors for the court to consider include identical equitable ownership, comingling of funds, use of the same offices, disregard of formalities, and use of one entity as a mere shell for the affairs of another." (*Butler America, LLC v. Aviation Assurance Co., LLC* (2020) 55 Cal.App.5th 136, 146 (*Butler*).) "An important factor in determining alter ego liability is that a corporate entity is so undercapitalized that it is likely to have no sufficient assets to meet its debts." (*Ibid*.) "When considering the application of the alter ego doctrine to a particular situation, it must be remembered that it is an equitable doctrine and, though courts have justified its application through consideration of many factors, their basic motivation is to assure a just and equitable result." (*Alexander v. Abbey of the Chimes* (1980) 104 Cal.App.3d 39, 48.)

"The decision to grant an amendment to add additional judgment debtors is reviewed for an abuse of discretion." (*Butler*, *supra*, 55 Cal.App.5th at p. 146.) Even that deferential standard of review, however, requires that we examine whether the court applied the correct legal principles in exercising its discretion. (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 [" 'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' "].)

Respondents contend that we should review the trial court's denial of Mendoza's motion to amend the judgment for substantial evidence. (See, e.g., *Misik v. D'Arco*, *supra*, 197 Cal.App.4th at p. 1072 [noting that existence of alter ego is " 'ordinarily a question of fact' " and that " 'conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence' "]; *Alexander v. Abbey of the Chimes*, *supra*, 104 Cal.App.3d at p. 47 [because determination of alter ego status "is primarily one for the trial court and is not a question of law, the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence"].) However, Mendoza does not contend the trial court's order lacks adequate factual support. Rather, she contends the court misapplied the controlling legal principles for determining whether to amend a judgment to include an alter ego debtor. Thus, once we are satisfied that the court applied the correct legal principles, we examine its ultimate determination for an abuse of discretion. (See *Relentless*, *supra*, 222 Cal.App.4th at p. 815.)

Finally, Mendoza's appeal is governed by familiar principles of appellate review. " 'A judgment or order of the lower court is presumed correct. All intendments and presumptions are

22

indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics omitted.) "We presume the trial court followed applicable law." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

## III.  The trial court did not misapply the alter ego doctrine

Mendoza argues that the trial court misapplied the controlling legal principles for determining whether to include Martinez as an alter ego judgment debtor.  According to Mendoza, the court erred by weighing the merits of her claims against Martinez and by relying on her dismissal of Martinez with prejudice.  She further contends the court erred by requiring her to show evidence of fraud or wrongful intent by Martinez or RBD, LLC.  As discussed below, we reject her arguments.

Regarding her first contention, Mendoza focuses our attention on statements by the trial court during the evidentiary hearing suggesting that it believed Mendoza's underlying claims against Martinez lacked merit.  Mendoza emphasizes that the trial court did not have all the relevant evidence before it to evaluate the merits of her claims against Martinez, and that it should not have looked beyond the terms of the stipulated judgment to determine if it reflected a " 'fair' resolution of the case."  As Mendoza puts it, "when a case ends via a stipulated judgment, *the case is over*.  There is no more inquiry into the underlying facts."

Before analyzing her argument, we observe that Mendoza's heavy reliance on the trial court's statements during the evidentiary hearing is at odds with the settled principle that "oral remarks or comments made by a trial court may not be used to

23

attack a subsequently entered order or judgment." (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1009; see also *Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1552 ["Opinions voiced by the trial court are to be distinguished from the trial court's decision; the opinions voiced by the trial court do not furnish any basis for an attack on an otherwise correct decision."].)  Thus, it is the trial court's final order, not its statements at the evidentiary hearing, that is the subject of our review.  Nevertheless, in the interests of justice we consider Mendoza's arguments.

We agree with Mendoza that Martinez's lack of personal liability on the underlying claims would not have been a sufficient ground to deny Mendoza's motion to amend the judgment to include him as an alter ego debtor.  (See, e.g., *Favila v. Pasquarella* (2021) 65 Cal.App.5th 934, 943–944 [rejecting argument that it was "unfair" to add defendant as alter ego judgment debtor after she obtained summary judgment in her favor]; *Danko v. O'Reilly* (2014) 232 Cal.App.4th 732, 749–752 [amending judgment to include alter ego debtor "was unrelated to the liability determinations made at trial," and thus not barred by directed verdict in favor of defendant]; *Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1, 6–8 [trial court's sustaining of demurrer in favor of defendant did not bar it from later adding defendant as alter ego judgment debtor].)

But based on our review of the transcript from the evidentiary hearing, we are not persuaded that this was a basis for the trial court's ruling.  Rather, we view the court's ruling as based primarily on its conclusion that because Mendoza voluntarily agreed to dismiss Martinez from the lawsuit with prejudice and to obtain a judgment against only RBD, LLC,

denying her the ability to enforce the judgment against Martinez would not lead to an inequitable result. We are not convinced that the trial court's ruling was outside the bounds of its wide discretion here. (See *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811 [alter ego doctrine " 'is essentially an equitable one and for that reason is particularly within the province of the trial court' "]; *Alexander v. Abbey of the Chimes*, *supra*, 104 Cal.App.3d at p. 46 ["the conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court"].)

That is especially so given the evidence that Mendoza was represented by counsel during the lawsuit, including during negotiations over the stipulated judgment; the absence of evidence that Mendoza was prevented from evaluating the finances and assets of Martinez or RBD, LLC prior to agreeing to the stipulated judgment; the evidence that Mendoza and Martinez both understood that she would enforce the stipulated judgment against the Goldenrod property, not Martinez; and the evidence that Mendoza understood, prior to dismissing Martinez with prejudice, that the title company disputed her ability to enforce the judgment against the Goldenrod property—in other words, she clearly understood the risks associated with that strategy.

The cases cited by Mendoza regarding the effect of a stipulated judgment do not warrant a different conclusion. If anything, they suggest that Mendoza should be held to the terms of the stipulated judgment, which provided for Martinez's dismissal with prejudice. (See *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 663 ["stipulated judgments bear the earmarks both of judgments

25

entered after litigation and contracts derived through mutual agreement"]; *A. J. Industries, Inc. v. Ver Halen* (1977) 75 Cal.App.3d 751, 759 ["A settlement contract has the attributes of a judgment in that it serves to bar reopening of the issues settled."].) Mendoza herself appears to recognize as much, stating that the "policy in California is to *uphold* settlement agreements and stipulated judgments, not to systematically question their validity during judgment enforcement." Upholding the stipulated judgment is precisely what the trial court did here: It disallowed Mendoza's attempt to add Martinez as a judgment debtor contrary to her earlier agreement to dismiss him from the action with prejudice.

Mendoza also discusses *Butler* in support of her argument, noting that *Butler* did not rely on whether the settlement agreement at issue in that case was " 'fully bargained' " by the parties. We find *Butler* distinguishable. In *Butler*, the parties settled a lawsuit by agreeing that the defendant would pay the plaintiff the greater of a fixed sum or a percentage of defendant's " 'revenue and income interest' " in a contract relating to the management and leasing of jet engines. (*Butler*, *supra*, 55 Cal.App.5th at p. 140.) But the defendant did not disclose during negotiations over the settlement that a separate corporate entity, not the defendant, was a party to the contract; that there was no written agreement regarding the income the defendant would receive under the contract; and that for a year after the contract was made it generated no income for the defendant. (*Id*. at p. 141.) After the defendant ceased making payments pursuant to the settlement agreement, the trial court entered a stipulated judgment in favor of the plaintiff as required by the terms of the settlement agreement. (*Id*. at p. 140.) The trial court thereafter

26

granted the plaintiff's motion to amend the judgment to add alter ego debtors. (*Id*. at p. 139.)

That neither the trial court nor the Court of Appeal in *Butler* relied on the bargained-for nature of the underlying settlement agreement makes sense in the context of that case. In affirming the amendment of the judgment to include alter ego debtors, the Court of Appeal agreed with the trial court's ruling that the defendant's fraudulent concealment relating to the jet engine contract rendered the settlement agreement's release unenforceable. (*Butler*, *supra*, 55 Cal.App.5th at pp. 143–145.) As the Court of Appeal emphasized, the defendant "knew the facts, but failed to disclose them. The entire transaction reeks of fraud on [defendant's] part." (*Id*. at p. 144.)

By contrast, nothing in the record here suggests any similar concealment regarding the parties' negotiation of the stipulated judgment. To the contrary, the evidence before the trial court demonstrated that Mendoza clearly understood the risks associated with dismissing Martinez with prejudice and instead seeking to enforce the judgment against RBD, LLC, and in particular, the Goldenrod property.

For a similar reason, we disagree with Mendoza that the trial court required her to show fraud or wrongful intent to prevail in her motion to amend the judgment. In support of her argument, Mendoza focuses our attention on remarks by the trial court during the evidentiary hearing noting the absence of evidence of fraud, concealment, or other bad faith conduct by Martinez or RBD, LLC aimed at avoiding satisfaction of the judgment or misleading Mendoza about their finances or assets.

It is correct, as Mendoza points out, that the "inequitable result" prong of the alter ego test does not require the party

27

seeking to amend a judgment to demonstrate fraud or bad faith. (See *Triyar Hospitality Management, LLC v. WSI (II)–WHP, LLC* (2020) 57 Cal.App.5th 636, 642–643 (*Triyar*) [rejecting argument that "there must be some conduct amounting to bad faith that makes it inequitable to hide behind the corporate form"]; *Relentless, supra,* 222 Cal.App.4th at p. 816 ["The trial court erred in requiring Relentless to prove that the Fultons acted with wrongful intent."].)

But again, based on our review of the transcript from the evidentiary hearing we are not persuaded that the trial court required Mendoza to show fraud or wrongful intent to prevail in her motion to amend the judgment. Rather, we understand the trial court's statements as reflecting its view that because Mendoza was not misled during her negotiations over the stipulated judgment, and understood the risks associated with her strategy of enforcing the judgment against RBD, LLC, and particularly the Goldenrod property, there was nothing inequitable about her later inability to enforce the judgment against RBD, LLC. (See *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 ["[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy" the inequitable result prong of alter ego test].) Mendoza's reliance on *Triyar* and *Relentless* is thus misplaced. Neither case involved the unique circumstances presented here, namely, a plaintiff's attempt to amend a judgment to add a party as an alter ego debtor after having negotiated a stipulated judgment dismissing that very same party with prejudice.[7]

---

[7] After oral argument, Mendoza notified us of the decision in *JPV 1 L.P. v. Dan Koetting* (Feb. 7, 2023, A163491) __

In sum, the trial court did not abuse its discretion in denying Mendoza's motion to amend the judgment to include Martinez as an alter ego debtor.

## IV. Reversal is not warranted due to the trial court's purported failure to consider unity of interest

Mendoza contends the trial court erred by failing to consider the evidence of unity of interest between RBD, LLC and RBD, Inc. She also argues that such evidence showed that RBD, Inc. "was nothing more than a mere continuation of RBD, LLC."

We need not reach these arguments. As noted above, a party seeking to amend a judgment to add an alter ego debtor must establish three elements, and unity of interest is only one of those elements. (See *Triyar*, *supra*, 57 Cal.App.5th at p. 641; *Relentless*, *supra*, 222 Cal.App.4th at pp. 815–816.) Hence, even if the trial court erred regarding its determination of the unity of interest between RBD, LLC and RBD, Inc., Mendoza would still need to demonstrate that the trial court erred in its determination of the other alter ego elements as applied to RBD, Inc. (See *Denham*, *supra*, 2 Cal.3d at p. 564 ["order of the lower court is *presumed correct*" and "error must be affirmatively shown"]; *Butler*, *supra*, 55 Cal.App.5th at p. 146 ["In addition to showing a unity of ownership, the moving party must show an inequitable result will follow if the acts are treated as those of the entity alone."].)

_____

Cal.App.5th __ [2023 WL 1791966]. (See Cal. Rules of Court, rule 8.254.) We are not persuaded that it applies here. Like *Triyar* and *Relentless*, it did not involve a plaintiff's attempt to add a party as an alter ego judgment debtor after having voluntarily dismissed that same party with prejudice.

29

Mendoza's briefs address only the unity of interest prong of the alter ego test regarding RBD, Inc.  Because Mendoza has failed to identify any error regarding the other prongs, she cannot demonstrate reversible error regarding the trial court's decision to deny amendment of the judgment to include RBD, Inc. as an alter ego debtor.[8]  (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [error "does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached"].)

## V.  Sanctions are not warranted

Respondents contend that Mendoza forfeited her appeal by filing an opening brief that does not describe the evidence supporting the trial court's order; by filing appendices that included the reporter's transcripts from the evidentiary hearing but did not include her notice of appeal; and by failing to include in the record on appeal the transcript from the hearing on her motion for reconsideration.  Respondents further argue that Mendoza waived her appeal by agreeing in the stipulated judgment that "[e]ach party hereby expressly waives any and all appellate rights."  Because we have concluded that Mendoza's

---

[8]     Mendoza's briefs also fail to identify any error regarding the trial court's determination of the first and second prongs of the alter ego test regarding Martinez.  Although we have already rejected Mendoza's arguments regarding the trial court's denial of her motion to amend the judgment to include Martinez as an alter ego debtor, we note that this is an additional ground to affirm the trial court's order.

30

arguments do not warrant reversal, we need not reach these contentions.

Citing these same arguments, and the claim that Mendoza's appeal was untimely, respondents' brief also requests sanctions against Mendoza. We deny the request because respondents failed to file a separate sanctions motion.[9] (See Cal. Rules of Court, rule 8.276(b)(1); *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 919 ["Sanctions cannot be sought in the respondent's brief."].)

---

[9] Although we deny respondents' sanctions request, we remind Mendoza that a notice of appeal is a required component of an appellant's appendix. (See Cal. Rules of Court, rule 8.124(b)(1)(A) [requiring appellant's appendix to include "[a]ll items required by rule 8.122(b)(1)"]; Cal. Rules of Court, rule 8.122(b)(1)(A) [requiring clerk's transcript to include notice of appeal].)

## DISPOSITION

The trial court's order denying Mendoza's motion to amend the judgment is affirmed. The request of Martinez and RBD, Inc. for sanctions is denied. Martinez and RBD, Inc. shall recover their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.

32