Filed 12/31/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RELENTLESS AIR RACING, LLC, <br><br>   Plaintiff and Appellant, <br><br> v. <br><br> AIRBORNE TURBINE LTD. PARTNERSHIP, <br><br>   Defendant and Respondent. | 2d Civil No. B244612 <br> (Super. Ct. No. CV090342) <br> (San Luis Obispo County) |

Relentless Air Racing, LLC (Relentless) obtained a money judgment against limited partnership, Airborne Turbine Ltd. Partnership (Airborne). Unable to collect the judgment, Relentless moved to add two natural persons and two corporations as judgment debtors. The trial court found that the natural persons and the corporations were the alter egos of Airborne. But the court denied the motion because it found Relentless failed to show that treating Airborne as a separate entity would lead to an inequitable result.

We reverse. Relentless cannot collect its judgment because Airborne is insolvent. Under the circumstances here, this is an inequitable result as a matter of law. (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 508 (*Greenspan*).) An inequitable result does not require a wrongful intent.

FACTS

Relentless sued Airborne in a contract dispute involving the sale of an airplane. Relentless prevailed and the trial court awarded it $174,374.95 in attorney fees and $6,640.91 in costs.

Relentless has been unable to collect its judgment from Airborne. Relentless moved to amend the judgment to add Wayne and Linda Fulton, Airborne Turbine, Inc. (ATI), and Paradise Aero, Inc. (Paradise) as judgment debtors.[1] Relentless claims that Airborne, ATI, and Paradise are alter egos of the Fultons. The motion rested on the post-judgment debtor examinations of the Fultons.

The Fultons are Airborne's sole limited partners and they are the sole officers and directors of ATI and Paradise. ATI was Airborne's general partner until 2011, when Paradise became Airborne's general partner. Wayne Fulton testified that he and Linda Fulton decided to change general partners at the end of trial on the underlying action. Linda Fulton testified they made the decision to change general partners because "[w]e just wanted to keep ATI completely separate [from Airborne] and the trial."

Linda Fulton stated that Airborne had a good chance to succeed at the beginning of trial. But the jury instructions twisted the law against Airborne. She said, "[I]f I had been on that jury I would have had to vote against myself too."

The Fultons and the entities through which they operate are in the business of importing and selling airplanes and airplane parts. The entities operate from an office in the Fultons' house using equipment owned by the Fultons. The Fultons make agreements among the entities. Thus, Linda Fulton testified Airborne pays ATI's utility bills in lieu of rent for the use of ATI's hanger.

The Fultons claim they have Airborne partnership meetings, as many as five or six times a day, when they speak to each other about business. They have written minutes, however, of only one meeting a year. When asked if they keep conversations about Airborne separate from conversations about ATI, Linda Fulton replied, "Well, generally it depended on what we're talking about. If it's let's say about the lawsuit, of course that's [Airborne]. If it's about another transaction we're working on, it's for that company. But we don't keep minutes per se of any meeting. Do you keep minutes with your wife about every conversation you have?"

---

[1] We shall refer to the Fultons, Airborne, ATI, and Paradise collectively as the Fulton parties as clarity demands.

Linda Fulton testified that she took draws from Airborne in the amount of $20,000 in September 2009; $15,000 and $7,500 in January 2010; and $15,000 in February 2010. The money was used to pay the Fultons' personal bills, which she testified were "over $15,000 a month." She said she made the decision to take a draw "[w]hen bills came up that I had to pay."

When asked if she and her husband have a meeting to make a decision about a draw, Linda Fulton replied, "No, this is how we make our money. We buy and sell aircraft. I don't have a job like you where you get your little weekly paycheck. [¶] This is how we make our money. We put money in. We take it out. We fund our company. We buy aircraft. We sell aircraft. We draw on the money that we earn. That's what we do for a living. They are not toys. These aircraft are not toys for us. It's our business. That's what we do. [¶] We can go through every month and say, oh, here is another 15 and here is another 20. How about that? That's what we do. That's how we do it."

The last time Airborne had a significant amount of money was in January 2011, prior to the underlying trial. In 2011 the Fultons withdrew $115,000 from Airborne. There is a helicopter that is the subject of litigation between the parties in Florida. Wayne Fulton sent the helicopter's logbooks to France. The helicopter cannot be operated without the logbooks. Airborne does not currently have any assets.

The trial court found that the Fultons are sole shareholders in the corporations and are the sole limited partners who controlled the underlying litigation.

The trial court also found that the Fultons and their business entities are not separate entities. That court stated: "[T]here is substantial evidence that the separate personalities of the business entities and the individuals no longer exist. The Fultons are the sole officers, members, shareholders, owners and operators of the business entities. The businesses are operated in the Fultons' personal residence. Money is freely transferred from the businesses to the Fultons. There is some disregard for the legal formalities. Corporate entities are used to procure labor and services for the benefit of the Fultons and their other businesses, such as the oral 'rent' agreement on the hanger.

3

Most compelling, was the Fultons' demeanor at trial during which they portrayed their business ventures as their personal efforts, benefits, responsibilities and liabilities."

The trial court found that there is not sufficient evidence, however, to show that an unjust or inequitable result would occur if Airborne is treated as an entity separate from the Fultons and their other entities. The trial court stated, "While the evidence . . . creates some suspicion, ultimately there is not sufficient evidence for the Court to conclusively find that an unjust or inequitable result would occur if the acts are treated as those of the Fultons' business entities. For example, Airborne's substitution of its general partner in 2011 may lead to the conclusion that the Fultons were transferring assets from one entity to another. However, there is no evidence that at the time of the transfer, Airborne had substantial assets that were transferred to the Fultons or another one of their businesses for purposes of avoiding payment of the judgment. [Fn. omitted.] There was a discussion regarding $115,000 received by Airborne in 2011, but there is no evidence those funds were improperly directed to the Fultons or to one of the other business entities. Relentless cites to Wayne Fulton's sending of the logbook to France, but the ramifications of that act will most likely be addressed in the Florida action involving Robinson. In other words, it is unclear how the act was detrimental to Relentless."

DISCUSSION

The trial court is authorized to amend a judgment to add judgment debtors. (*Greenspan*, *supra*, 191 Cal.App.4th at p. 508.) The judgment may be amended to add additional judgment debtors on the ground that a person or entity is the alter ego of the original judgment debtor. (*Ibid.*) It is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. (*Ibid.*) The decision to grant an amendment lies in the sound discretion of the trial court. (*Ibid.*) Great liberality is allowed in granting such amendments. (*Ibid.*)

In order to prevail in a motion to add judgment debtors, Relentless must show that (1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of

4

interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone. (*Greenspan*, *supra*, 191 Cal.App.4th at pp. 509, 511.)

The trial court found the first two factors in favor of Relentless. Those findings are supported by more than ample evidence and are not challenged here.

The trial court found the third factor against Relentless. It found Relentless failed to show that if the acts are treated as Airborne's alone, an inequitable result would follow. In reaching that conclusion, the trial court found that Relentless failed to prove the Fultons changed Airborne's general partner in order to avoid the judgment, or that the $115,000 the Fultons withdrew from Airborne was "improperly directed." In addition, Relentless failed to show it was harmed by Wayne Fulton's action in sending the helicopter's logbooks to France because the matter would be resolved in a Florida lawsuit.

The trial court erred in requiring Relentless to prove that the Fultons acted with wrongful intent. The law does not require such proof. Relentless was required to prove that the Fultons' acts caused prove an "inequitable *result*." (*Greenspan*, *supra*, 191 Cal.App.4th at p. 511, italics added.) Here the Fultons' intent is beside the point.

The Fultons used Airborne's funds to pay their personal debts. It is undisputed that since the underlying litigation in 2011, Airborne has had no substantial assets from which the judgment could be satisfied. Relentless has therefore been unable to collect its judgment from Airborne. The Fultons continue to operate their business, but as Airborne's sole limited partners and the sole shareholders of its general partner, they are in complete control of Airborne. As long as Airborne is the sole judgment debtor, it is highly unlikely it will ever have assets with which to satisfy the judgment. Given the trial court's finding that the Fultons, Airborne, ATI, and Paradise are one and the same, it would be inequitable as a matter of law to preclude Relentless from collecting its judgment by treating Airborne as a separate entity.

The Fulton parties point out that when two or more inferences can be reasonably deduced from the facts, we are without power to substitute our deductions for

5

those of the trial court. (Citing *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) But there is only one reasonable inference here—*there is an inequitable result* if the Fultons, ATI, and Paradise are not added as judgment debtors.

The Fulton parties argue that Relentless was aware of the alter ego relationship before judgment. They claim, without citation to the record, that Wayne Fulton was named as a defendant in the underlying lawsuit, specifically alleging Fulton was the alter ego of Airborne. Relentless dismissed Fulton prior to trial. They also claim, without citation to the record, that Relentless learned of the relationship between the Fultons, ATI and Paradise during trial.

The Fulton parties rely on *Greenspan*, *supra*, 191 Cal.App.4th, page 516. There, the trial court denied the plaintiff's motion to amend the judgment on the ground that plaintiff could and should have litigated any alter ego status in the underlying action. In reversing the Court of Appeal stated, "But under the trial court's reasoning, the plaintiff in every corporate contract case would be encouraged—regardless of the circumstances—to sue not only the corporation but also its owners and affiliated companies and then engage in *pretrial* discovery in an attempt to establish alter ego liability. This would promote a fishing expedition into alter ego evidence *before* the plaintiff obtained a favorable judgment, if at all. Thus, it may be prudent for a plaintiff to sue only the corporation. Should problems later arise in satisfying a judgment against the corporation, the plaintiff may resort to appropriate postjudgment proceedings [citation], including [the] procedure for adding judgment debtors. Of course, if before filing suit, the plaintiff reasonably believes that an alter ego relationship exists among various individuals and companies, the complaint should probably include alter ego allegations and name the alleged alter egos as defendants." (*Id.* at p. 517.)

As *Greenspan* points out, there are good policy reasons not to force a plaintiff to litigate alter ego status in the underlying action. Nothing in *Greenspan* requires plaintiffs to do so. At most, *Greenspan* states that where a plaintiff reasonably believes an alter ego relationship exists, the complaint "should probably" include alter ego allegations. "Should probably" is not mandatory.

6

The Fulton parties' reliance on *Jines v. Abarbanel* (1978) 77 Cal.App.3d 702, is also misplaced. There, plaintiff obtained a malpractice judgment against a physician. Plaintiff made a postjudgment motion to add the doctor's professional corporation as a judgment debtor. The trial court granted the motion. The Court of Appeal reversed. The court expressly rejected plaintiff's argument that the doctor would be able to insulate some of his earnings from the reach of judgment creditors through his professional corporation. (*Id.* at pp. 714-715.) The court also pointed out that plaintiff was aware of the existence of the professional corporation before the case was tried. (*Id.* at p. 717.)

In *Jines*, the relationship between the doctor and his professional corporation was obvious from the beginning. The relationship between the Fultons, their limited partnership and their shifting corporate general partners was anything but obvious. It is one thing to allege an alter ego relationship, it is another thing to prove it. It makes no sense to deny Relentless a recovery because it did not engage in pretrial discovery and spend time litigating an alter ego allegation, when the entire matter might have been resolved simply by the Fulton parties paying the judgment.

The order is reversed. The judgment is amended to add the Fultons, ATI, and Paradise as judgment debtors. The matter is remanded for further proceedings consistent with this opinion. Costs are awarded to Relentless.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

7

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

Adamski Moroski Madden Cumberland & Green, David M. Cumberland and Joshua M. George for Plaintiff and Appellant.

Cox Wootton Griffin Hansen & Poulous and Rupert P. Hansen for Defendant and Respondent.