Filed 5/26/22  Noah's Ark Processors, LLC v. Value Meats, Inc. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| NOAH'S ARK PROCESSORS, LLC, | B312950 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. VC065433) |
| v. | |
| VALUE MEATS, INC., | |
| Defendant; | |
| JAMES DICKMAN et al., | |
| Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Affirmed.

Law Offices of Ami Meyers and Ami Meyers for Plaintiff and Appellant.

Nevers, Palazzo, Packard, Wildermuth & Wynner, John Bamford; Ferguson Case Orr Paterson, and John A. Hribar for Respondents.

\* \* \* \* \* \*

A judgment creditor sought to amend a judgment to add the two brothers who ran the company that was the original judgment debtor. The trial court denied the creditor's motion. This was undoubtedly the right result, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Corporate history of Value Meats, Inc.*

Value Meats, Inc. (the company), was founded in 1969 by the Dickman family and was a flourishing business specializing in selling processed meats, under the name Charlie's Pride, for almost 50 years.

The directors of the company were Charles Dickman and his two sons, James Dickman and Robert Dickman.[1] All of the company's stock was also owned equally by these three men and their respective family trusts. James and Robert started working for the company in 1980, and later shared the role of CEO. They drew annual salaries from the company for their services as co-CEOs.

---

[1] Because the owners of Value Meats all share the same surname, we use their first names to avoid confusion. We mean no disrespect.

In 2015, the company had between 125 and 145 employees, and it enjoyed a revenue of between $50 million and $70 million during the years 2015 and 2016. The company ran its manufacturing operations out of a building in Vernon, California owned by an LLC whose sole member was Charles's family trust.

The company fell on hard times and started experiencing a "cash shortfall" after it received a batch of diseased meat in 2015. Charles, James, and Robert all made loans to the company to keep it afloat. Charles alone was owed $1,189,381.92 as of January 1, 2016, and he made further loans totaling $357,326.60 in 2016. The company repaid Charles around $330,000 that same year. Also in 2016, the company made five rental payments to the LLC that exceeded the maximum monthly amount set forth in the company's shareholders' agreement executed in 2010.

In October 2016, the company entered a general assignment for the benefit of creditors—that is, James and Robert voluntarily relinquished control of the company to a third party tasked with equitably dissolving and distributing the company's assets to its creditors.

## B.    *The underlying dispute*

Noah's Ark Processors, LLC (plaintiff) was a vendor who supplied the company with meat. On April 8, 2016, plaintiff sued the company for an unpaid balance of $165,952.96.

In September 2016, the parties reached a stipulated settlement. Under the settlement, the company agreed (1) to pay plaintiff the outstanding balance in four monthly installments of $42,107.18, and (2) in the event of default on the installment payments, to stipulate to the entry of judgment in plaintiff's favor in the amount of $180,000 (less any installments paid) plus

interest and attorney fees.  The company was only able to make one installment before it defaulted.

On November 14, 2016, the trial court granted plaintiff's unopposed motion to enforce the settlement and, on November 28, 2016, entered judgment against the company for $137,892.82, as well as interest and attorney fees.

## II.    Procedural Background

More than four years later, in December 2020, plaintiff filed a motion to amend the judgment to add James and Robert as judgment debtors on the ground that they were alter egos of the company.

Plaintiff relied on evidence that (1) the company was a closely-held, family-owned company; (2) the brothers used company assets during insolvency to repay Charles's loans, to pay rent to the LLC, and to pay salaries to themselves;[2] (3) the brothers and the company were represented by the same law firm; and (4) James selectively failed to remember information contained within corporate records when questioned about them but was later able to produce those records.

After further briefing, the trial court denied the motion.  As to Robert, the court ruled that he could not be added as a judgment debtor because plaintiff failed to present sufficient evidence that he controlled the underlying litigation against plaintiff.  As to James, the court ruled that James controlled the company's litigation against plaintiff, but the court ruled that the

---

[2]     Plaintiff also asserted that James and Robert used company assets to pay for their luxury vehicles, but plaintiff has abandoned that assertion on appeal (presumably because the costs were irrefutably authorized by the shareholder agreement) so we will not discuss it further.

evidence was insufficient "to establish that alter ego liability should be imposed." The trial court specifically addressed some of the evidence of unity of interest and ownership that plaintiff cited. Regarding the repayments to Charles, the court concluded that they were for "short-term loans" and that the company still owed Charles over $1 million, which tended to refute the notion that Charles was "raiding" the company. Regarding the rent payments to the LLC, the court concluded that the company and the LLC "had a valid, written and enforceable lease agreement" that "require[ed] monthly rental payments." And regarding the joint representation, the court concluded that "the Dickmans' choice of counsel is not a factor in determining alter ego liability."

Plaintiff timely appealed.

## DISCUSSION

Plaintiff argues that the trial court erred in denying its motion to amend the judgment to add James and Robert as debtors.

## I.    Governing Law

A trial court has the equitable discretion to amend a judgment to name new judgment debtors if (1) "the parties to be added as judgment debtors had control over the underlying litigation and were virtually represented in that proceeding"; and (2) those parties are "the alter ego" of the original judgment debtor. (*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 815-816 (*Relentless*); *LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3 Cal.App.5th 1067, 1081 (*LSREF2*); *Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1421 (*Triplett*); see generally Code Civ. Proc., § 187.)

5

The alter ego element is met if (1) there is """such unity of interest and ownership that the separate personalities of the corporation [that was the original judgment debtor] and the individual[s] [to be added as judgment debtors] no longer exist,""" and (2) """an inequitable result will follow""" if the new judgment debtors are not added.  (*LSREF2*, *supra*, 3 Cal.App.5th at p. 1081; *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1107-1108; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 509, 511-512 (*Greenspan*).  Because the alter ego doctrine marks a departure from the presumption that collective entities are legally distinct from their shareholders, piercing the veil is "'an extreme remedy, [to be] sparingly used'" (*Hasso v. Hapke* (2014) 227 Cal.App.5th 107, 155), and the party seeking to invoke it generally bears a "heavy burden" (*Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1085, 1105).

In assessing whether the party invoking the alter ego doctrine has met its burden in showing there is a "unity of interest and ownership" between the corporate entity and the individual, courts look to the totality of the circumstances. (*Greenspan*, *supra*, 191 Cal.App.4th at pp. 511-512; *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538-539 (*Sonora Diamond*).)  There is a deluge of relevant circumstances, including (1) whether there has been a commingling of funds, (2) whether an individual shareholder has treated corporate assets as his own, (3) whether the corporation has failed to obtain authority to issue, or to subscribe to issue, stock, (4) whether an individual shareholder has represented that he is personally liable for corporate debts, (5) whether multiple

6

corporations have common ownership or common leadership, (6) whether the individual uses the same business location, employees, or attorney, (7) whether the corporation was insufficiently capitalized, (8) whether the corporation was used as """"a mere shell,"""" (9) whether the identity of the true owners or financial interest of the corporation has been concealed, (10) whether the corporation disregarded """"legal formalities"""" or failed to maintain """"arm's length relationships among related entities,"""" (11) whether the corporate entity was used to procure labor, service or merchandise for another person or entity, (12) whether assets of the corporation were diverted """"to the detriment of creditors,"""" (13) whether the corporation was used """"as a shield against personal liability,"""" and (14) whether the corporation was used to transfer liability. (*Greenspan*, at pp. 512-513; *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838-840.)

In assessing whether an inequitable result will follow if the new judgment debtors are not added, a plaintiff's inability to "collect its judgment" because the original debtor "is insolvent" "is an inequitable result as a matter of law." (*Relentless*, *supra*, 222 Cal.App.4th at p. 813.) However, such "difficulty in enforcing a judgment does not alone satisfy" the overall alter ego standard; unity of ownership and interest is still required. (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418; *Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 539.)

We review a trial court's decision declining to amend a judgment to add debtors for an abuse of discretion. (*Relentless*, *supra*, 222 Cal.App.4th at p. 815), but review subsidiary factual findings—including whether the individuals to be added as debtors are the alter ego of the original judgment debtor—for

7

substantial evidence.  (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1248.)  Where, as here, the substantial evidence challenge is brought by the party with the burden of proof below, we may overturn factual findings only if "'the evidence compels a finding in favor of the appellant as a matter of law.'"  (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)  The fact that there is evidence in the record to support a contrary finding does not *compel* the conclusion that there is no substantial evidence to support the trial court's ruling.  (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.)  Nor are we permitted to reweigh the evidence ourselves to come to a conclusion more to the appealing party's liking.  (*Gomez v. Smith* (2000) 54 Cal.App.5th 1016, 1043.)

## II.   Analysis

The trial court did not abuse its discretion in denying plaintiff's 2020 motion to add James and Robert as debtors to the 2016 judgment.

As to Robert, plaintiff does not challenge the trial court's finding that Robert exerted no control over the company's litigation against plaintiff.  Without this element, there can be no alter ego liability.  (*Relentless*, *supra*, 222 Cal.App.4th at pp. 815-816.)

As to James, the evidence does not compel a finding that the company was James's alter ego.  That is because the vast majority of pertinent factors indicate that the company is *not* his alter ego:  There is no evidence of a commingling of funds between James and the company; no evidence that the company failed to obtain authority to issue its stock; no evidence that James has represented that he is personally liable for the

8

company's debts; no evidence that James has the same business location or employees as the company; no evidence that the company was insufficiently capitalized for the 45 years before it received a shipment of diseased meat; no evidence that the company was a "mere shell"; no evidence that the company's true owners or their financial interests were ever concealed; no evidence that the company has not adhered to the formalities of having a board of directors, having regular meetings, and maintaining minutes, or that the transactions the company had with James, Charles, Robert or the LLC in establishing loans or rental arrangements were not at arm's length; no evidence that the company procured labor or services for anyone else; no evidence that the company was used as a shield against James's personal liability; and no evidence that the company was used to transfer liability away from James.  To the contrary, the company was a family-owned company that had an independent existence with many employees and a legitimate revenue for nearly half a century.

Plaintiff makes what boil down to three categories of arguments in response.

First, plaintiff argues that two of the alter ego factors cut in favor of a finding that the company is James's alter ego—namely, that (1) the same law firm that represented the company prior to the assignment for the benefit of creditors represented James individually thereafter, and (2) the company is owned and controlled by James (as well as other members of the Dickman family).  Although both factors are relevant,[3] the evidence

_____

[3]     Thus, the trial court was incorrect in stating that James's "choice of counsel" is "not a factor."  However, its misstatement of

9

plaintiff presented does not compel a finding that the company is James's alter ego. To begin with, the existence of these two factors cutting in plaintiff's favor—even if we accept that they do—does not somehow negate the other ten-plus factors cutting *against* plaintiff, and thus does not compel the finding that the company is James's alter ego. (Accord, *Zoran Corp v. Chen* (2010) 185 Cal.App.4th 799, 812 ["'[n]o single factor is determinative'"].) Further, those factors do not strongly cut in plaintiff's favor in any event. Plaintiff's sole evidence that James used the same lawyer as the company is (1) a proof of claim that the law firm submitted to the company's assignee after October 2016 seeking fees incurred by the company prior to the assignment, and (2) evidence that James retained the same law firm to represent him in his individual capacity after the assignment. There is no evidence that the law firm represented the company and James *at the same time*, as the references in the billing statements to the firm's interactions with James prior to the assignment reflect nothing more than the reality that James was one of the company's co-CEOs. Plaintiff complains that the law firm acquired "inside knowledge" during its representation of the company that it may be using to aid James now, but this seems inevitable—and hence less problematic—since the only way the company can speak with a lawyer is through its human representatives; further, it is unclear how his proffered conflict of interest makes the company any more likely to be James's alter ego. That the company is family owned is also not dispositive. (*Eleanor Licensing LLC v. Classic Recreations LLC* (2018) 21

---

law is of no moment because our task is to review the court's result, not to flyspeck its reasoning. (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.)

Cal.App.5th 599, 616 [alter ego finding reversed where based solely on fact that companies were "closely held family businesses"].)

Second, plaintiff argues that the company is an alter ego for James because James breached his fiduciary duty, as the officer of an insolvent company, not to prioritize himself and his family above the company's creditors when he (1) made loan repayments on Charles's loans to the company, and (2) paid the company's rent to the LLC at a rate that exceeded the rate authorized by the company's bylaws. For support, plaintiff cites *Pepper v. Litton* (1939) 308 U.S. 295; *Title Ins. & Trust Co. v. California Dev. Co.* (1915) 171 Cal. 173; and *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020 (*Berg*). It is unclear whether plaintiff is arguing that James's preferential treatment of his family's debts to the debts of outsiders is (1) meant to show the unity of ownership between himself and the company in support of an alter ego theory, or (2) meant to constitute an independent basis for adding him (as well as Robert) as a judgment debtor apart from alter ego liability. Even if we accept as a given plaintiff's assertions that James (and, for that matter Robert) was breaching a fiduciary duty by repaying his father's loans and by paying the rent to a company owned by a family trust,[4] those assertions do not entitle plaintiff to add James (or Robert) as judgment debtors.

To the extent these considerations are proffered as part of the alter ego analysis, James's preferential treatment of family

_____

[4]   Because we are accepting these assertions as true, we have no occasion to consider plaintiff's subsidiary arguments regarding evidentiary rulings that bear only on the truth of those assertions.

11

creditors over other creditors—even if doing so may have breached a duty he had to rank creditors differently—speaks to how James should run the company, not that James *is* the company. At best, this consideration supports the existence of one additional factor—whether the assets of the corporation were diverted to the detriment of creditors—but that one factor is not dispositive, and does not outweigh the cascade of factors counseling a finding of *no* unity of ownership and identity.

To the extent these considerations are offered as an alternate legal theory *beyond* alter ego with which to make both James and Robert liable (because Robert's lack of control over the litigation would not matter), we reject this argument as a matter of law. As the court in *Triplett* observed many years ago, there are no cases "extending section 187 to permit addition of a defendant by postjudgment motion *except* where the added defendant was found to be the alter ego of the original defendant." (*Triplett*, *supra*, 24 Cal.App.4th at p. 1420.) This is no accident. Adding a person to a judgment when that person had no notice and opportunity to be heard in the proceeding that produced that judgment is permissible under an alter ego theory (and *only* an alter ego theory) because, in that situation, the person's control over and identity with the judgment debtor means that the person was, in effect, a party to the prior proceeding and accorded due process, so the motion to amend "amount[s] to little more than correcting a misnomer in naming the defendant." (*Ibid.*; *Wolf Metals Inc. v. Rand Pacific Sales Inc.* (2016) 4 Cal.App.5th 698, 703.) Here, plaintiff is seeking to add James and Robert as judgment debtors because they breached a duty they had to the company rather than because they *are* the company. Because a corporate officer's liability under the

precedent plaintiff cites requires proof of additional elements (such as proof that the officer's conduct involved "actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors['] claims" (*Berg*, *supra*, 178 Cal.App.4th at p. 1041, italics omitted)), adding James and Robert as corporate defendants under plaintiff's proffered theory would violate due process because they were not virtually represented in the proceeding that resulted in the judgment against the company-debtor, and thus most certainly would exceed the scope of what is permitted under Code of Civil Procedure section 187.

Third, plaintiff cites several other facts that, in its view, support a finding of unity of ownership and control—namely, that (1) James had "selective memory" in recalling what was contained in the company's records, (2) James committed "multiple perjuries in trying to evade responsibility for looting a corporation," and (3) the law firm "betrayed [the company as] its former client." These facts are either wholly irrelevant or, even if they speak to one or two relevant factors, do not otherwise compel a finding of a unity of ownership and identity.

\* \* \*

In light of our conclusion that the evidence does not compel a finding in plaintiff's favor as a matter of law on the unity-of-interest requirement, we have no occasion to reach the requirement that an inequitable result will follow if James and Robert are not added as judgment debtors.

13

**DISPOSITION**

The order is affirmed.  James and Robert are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ