Filed 8/21/25  So-McKinley v. Organic Roots Temecula CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SO-MCKINLEY, LLC, Plaintiff and Appellant, v. ORGANIC ROOTS TEMECULA, INC., Defendant and Respondent. | D085917 (Super. Ct. No. CVRI2200638) |

APPEAL from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge.  Reversed and remanded with instructions.

Law Office of Steven S. Wang and Steven S. Wang for Plaintiff and Appellant.

Tyler Law; Nathan R. Klein and Myla Razel P. Sarmiento for Defendant and Respondent.

So-McKinley, LLC (McKinley) appeals a judgment of dismissal in favor of Organic Roots Temecula, Inc. (Organic Temecula).  The judgment was entered after the trial court sustained without leave to amend a demurrer to McKinley's Third Amended Complaint for failure to plead the elements of alter ego liability against Organic Temecula.

We agree with the trial court that McKinley's Third Amended Complaint failed to include all the elements necessary to allege alter ego liability against Organic Temecula. However, we conclude McKinley can meet the low threshold of showing there is a "reasonable possibility" it can amend its complaint to state a cause of action under "any legal theory" and has done so in its proposed Fourth Amended Complaint, which adequately alleges alter ego liability and successor liability against Organic Temecula.

We therefore reverse the judgment of dismissal and remand with directions for the trial court to sustain the demurrer to the Third Amended Complaint and grant McKinley leave to file its Fourth Amended Complaint.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Lease Agreement, Formation of Organic Temecula, and the Transfer of Assets*[1]

Organic Roots, Inc. (Organic) is a California corporation doing business in Riverside County, California. Paul Cook is its chief executive officer, secretary, chief financial officer, and director. Organic operated a grocery store in Temecula, California.

Sometime in 2016, Cook and Organic became embroiled in a lawsuit with Cook's mother, Linda Watson, the co-founder of Organic.[2] The lawsuit settled in May 2019 when Cook agreed to buy all the shares of Organic from

---

[1] We draw the facts from the Third Amended Complaint and its supporting exhibits. On review of a grant of demurrer, we accept as true all facts alleged in the complaint and facts that may be implied or inferred from those facts expressly alleged. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 (*Marshall*).)

[2] Although our analysis focuses on the facts alleged in McKinley's Third Amended Complaint, for background on this lawsuit we drew some facts from Organic Temecula's brief.

Watson. Cook failed to pay off the purchase price, and by 2021, Cook and Organic owed $1,130,000 on the settlement to Watson's widower, Tom Watson.

In 2018, Organic wanted to open another grocery store in Corona, California. Organic negotiated with McKinley, a Delaware LLC operating in Riverside County, California, to lease premises in the McKinley Crossroads Shopping Center in Corona.

Organic and McKinley entered into a 10-year lease dated May 10, 2018. The lease agreement contained an early termination clause allowing either Organic or McKinley to terminate the lease before the end of the 10-year term. Among other provisions, the termination clause provided the effective date of any termination would be nine months following the delivery of a notice of termination.

Over the next two years, Organic fell significantly behind in its rent payments. In May 2020, Organic and McKinley entered into a First Amendment to the lease agreement, agreeing McKinley would forgive $599,134.80 in past rent if Organic paid its monthly rent and did not otherwise default on its lease agreement obligations for the next five years.[3] If Organic defaulted at any time before then, the full amount of the past due rent would be immediately due and payable.

Organic did not make all its rent payments, and in May 2021 the parties entered into a Second Amendment to the lease agreement. They stipulated that Organic had failed to timely pay all rent due from the date of the First Amendment and owed $599,134.80 in existing past due rent and

---

[3] McKinley's Third Amended Complaint recites the past due amount as $559,134.80. The First Amendment and Second Amendment to the lease agreement both state the past due rent was $599,134.80.

$23,202.12 in additional past due rent.  McKinley again agreed to waive the default, with some additional conditions.

In September 2021, Organic Temecula was formed as a California corporation.  As with Organic, Cook is Organic Temecula's sole officer, director, and shareholder.  The same day Organic Temecula was formed, Organic and Organic Temecula entered into an "Agreement and Plan of Reorganization and Corporation Separation" (Reorganization Plan), pursuant to which Organic transferred "all equipment, furniture, fixtures, goods, and other tangible personal property" to Organic Temecula for no consideration.

McKinley's Third Amended Complaint quotes Organic Temecula's discovery response regarding why Organic Temecula was created:  "Early in 2021, creditor Tom Watson, who was owed approximately $1,130,000 by Organic Roots and Paul Cook . . . , demanded that Organic Roots take steps to separate the Temecula store operations and Corona store operations as Organic Roots was in default of its payments to Tom Watson, or else he would call the note due to him immediately payable, which would have potentially put Organic Roots' operations out of business.  In a July 26, 2021 special meeting of shareholders, Paul Cook was directed to speak with tax counsel and corporate counsel to explore options to prevent Tom Watson from shutting down operations.  The end result and decision by Organic Roots' shareholders was to form Organic Roots Temecula, Inc., and spin off the Temecula store operations from Organic Roots, Inc.  In exchange, Tom Watson agreed to a modified repayment plan and additional security in the

4

form of stock pledge agreements and security interests in Organic Roots Temecula, Inc.'s assets and Paul Cook's personal assets."[4]

McKinley alleges the Reorganization Plan amounted to transfer of "all [Organic's] assets" to the newly created Organic Temecula and was done to allow Organic "to avoid the actions of creditors."

In November 2021, Organic sent a letter to McKinley purporting to terminate Organic's lease for the Corona grocery store.  Organic indicated it would stop payment of rent nine months from the date of its termination letter.   McKinley responded in correspondence denying Organic had a right to terminate the lease at that time under the terms of the lease agreement.

Organic vacated the premises in Corona and ceased to operate its Corona grocery store in December 2021.

The Third Amended Complaint alleges Organic and Organic Temecula made Organic "judgment proof" to creditors and acted to deny McKinley the benefits of the lease agreement

B. *McKinley Sues Organic and Cook for Breach of the Lease Agreement and Tries to Add Organic Temecula*

In February 2022 McKinley sued Organic and Cook for breach of contract, breach of guarantee, anticipatory breach, conversion, and declaratory relief.

McKinley obtained leave of court to file a Second Amended Complaint to add Organic Temecula as an alter ego defendant.  Organic answered the Second Amended Complaint.  Organic Temecula demurred, asserting the complaint failed to allege facts to demonstrate Organic Temecula was an

---

[4]     Organic Temecula concedes Cook is the sole shareholder of Organic and Organic Temecula.  It is unclear why Organic Temecula repeatedly referred to Organic's "shareholders," in the plural, in its discovery response.

alter ego of Organic. The trial court sustained the demurrer with leave to amend.

McKinley filed a Third Amended Complaint, containing the allegations recited in the statement of facts above. Organic answered the Third Amended Complaint. Organic Temecula again demurred, arguing the complaint still failed to allege facts to demonstrate Organic Temecula was an alter ego of Organic.

The trial court sustained Organic Temecula's demurrer without leave to amend and entered judgment in favor of Organic Temecula.

McKinley moved for reconsideration of the trial court's ruling, attaching a proposed Fourth Amended Complaint. The trial court denied the motion, finding it was filed more than 10 days after service of Organic Temecula's notice of ruling, McKinley failed to meet its burden of showing it could not have discovered the new facts earlier, and the court lacked jurisdiction to rule on a motion filed after entry of judgment.

McKinley timely appealed.

STANDARD OF REVIEW

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) " 'We treat the demurrer as admitting all material facts properly pleaded [citation],' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*)), and facts that may be implied or inferred from those facts as expressly alleged. (*Marshall, supra*, 37 Cal.App.4th at p. 1403.) We generally construe the allegations of the complaint liberally with a view to substantive justice between the parties.

6

(*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1387.)

When, as here, a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm."  (*Blank, supra*, 39 Cal.3d at p. 318.)  The plaintiff bears the burden of proving there is a reasonable possibility of amendment and may make this showing for the first time on appeal.  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

## DISCUSSION

We conclude the Third Amended Complaint fails to sufficiently state a cause of action against Organic Temecula.  However, McKinley has shown a reasonable possibility the defect can be cured in its proposed Fourth Amended Complaint.

A. *Alter Ego Liability*

1. Guiding Principles

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests."  (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 (*Mesler*).)  The courts "will disregard the corporate form, or, to use accepted terminology, 'pierce the corporate veil,' whenever necessary to prevent fraud or to achieve equity."  (*Lyons v. Stevenson* (1977) 65 Cal.App.3d 595, 606.)

"Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with

7

caution." (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249 (*Las Palmas*).)  Accordingly, the alter ego doctrine "is an extreme remedy, sparingly used." (*Sonora Diamond* (2000) 83 Cal.App.4th 523, 539 (*Sonora*).)  The plaintiff has the burden to overcome the presumption of the separate existence of the corporate entity.  (*Mid-Century Ins. Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1212.)

There are two general requirements to pierce the corporate veil:  " '(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other entity] no longer exist and (2) that, if the acts are treated as those of [one] corporation alone, an inequitable result will follow.' " (*Mesler, supra*, 39 Cal.3d at p. 300.)  "There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case." (*Ibid.*)  "The essence of the alter ego doctrine is that justice be done.  'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result.' [Citation.]" (*Id.* at p. 301.)

2. <u>Analysis</u>

a. Third Amended Complaint Adequately Alleges Unity of Interest and Ownership.

Because the alleged conduct by Organic and Organic Temecula meets many of the factors necessary to demonstrate a unity of interest and ownership, we conclude the Third Amended Complaint adequately alleges this prong of the alter ego doctrine.

The first requirement for disregarding the corporate entity under the alter ego doctrine considers whether there is sufficient unity of interest and ownership such that the separate personalities of the individual and the

corporation no longer exist. (*Mesler, supra*, 39 Cal.3d at p. 300.) Among the many factors to be considered in applying the doctrine are: "[c]ommingling of funds and other assets . . . . identical equitable ownership in the two entities; . . . sole ownership of all of the stock in a corporation by one individual or the members of a family; . . . the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; . . . the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; . . . and the formation and use of a corporation to transfer to it the existing liability of another person or entity." (*Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838–840 (*Associated Vendors*).) " ' "No single factor is determinative," ' " and a court should " ' "examine all the circumstances to determine whether to apply the doctrine." ' " (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073 (*Misik*).)

The facts alleged in the Third Amended Complaint implicate several of the *Associated Vendors* factors. First, the complaint alleges Organic and Organic Temecula have "identical equitable ownership in the two entities" because they share the same single officer, director, and shareholder. (*Associated Vendors*, *supra*, 210 Cal.App.2d at p. 839.) The complaint further alleges "sole ownership of all the stock in a corporation by one individual" (*ibid.*), identifying Cook as the same and sole shareholder for both Organic and Organic Temecula.

The Third Amended Complaint also alleges Organic transferred all its assets to Organic Temecula without consideration, which implicates several alter ego factors including "commingling of funds and other assets" between Organic and Organic Temecula and the failure to "maintain arms' length

9

relationships."[5] (*Associated Vendors, supra*, 210 Cal.App.2d at pp. 838, 840.) Cook's creation of an immediate transfer of assets to Organic Temecula while leaving Organic with the liability for the past due rent to McKinley suggest "the diversion of assets from a corporation . . . [to an]other person or entity, to the detriment of creditors" and "the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another," among other factors. (*Associated Vendors, supra*, 210 Cal.App.2d at p. 840.)

While the Third Amended Complaint adequately pleads a unity of interests, as we next explain, it falls short in demonstrating an equitable result.

> b. Third Amended Complaint Fails to Adequately Allege Inequitable Result, but Fourth Amended Complaint Cures the Defect.

The Third Amended Complaint alleges that a future judgment would be uncollectable from Organic. We agree with the trial court that this was insufficient to plead an inequitable result. However, we conclude the allegations in the Fourth Amended Complaint sufficiently remedy the defect and the trial court erred in denying leave to amend.

The proposed Fourth Amended Complaint alleges Organic Temecula is insolvent, lacks liability insurance, and has insufficient funds to pay any judgment due to the transfer of "all" assets from Organic to Organic Temecula for no consideration. These additional allegations are sufficient to show inequity would result if the corporate veil is not pierced because

---

[5] Organic Temecula contends the consideration it gave in exchange for Organic's assets was its agreement "to assume Mr. Watson's $1.1 million debt." We do not reach this issue. At this stage, we consider only the well-pleaded facts in the complaint to determine its sufficiency. (*Blank, supra*, 39 Cal.3d at p. 318.) Whether consideration was adequate and a product of arms' length dealings are questions that must be resolved in the trial court.

Organic has "no substantial assets from which the judgment could be satisfied." (*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 813 (*Relentless*)).

Organic Temecula contends that the allegations are inadequate because McKinley must allege bad faith or fraud to demonstrate an inequitable result. But "[t]he law does not require such proof." (*Relentless, supra*, 222 Cal.App.4th at p. 816.) A plaintiff must prove the defendant's acts caused an inequitable result; the defendant's intent "is beside the point." (*Ibid*.) As California's Supreme Court explained, "It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice." (*Gordon v. Aztec Brewing Co.* (1949) 33 Cal.2d 514, 523.)

While an unjust or inequitable result may occur regardless of wrongful intent, courts caution "it is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced . . . . In almost every instance where a plaintiff has attempted to invoke the doctrine he is an unsatisfied creditor." (*Associated Vendors, supra*, 210 Cal.App.2d at p. 842.) Allowing parties to pierce a corporate veil merely due to an unsatisfied debt would undermine the legitimate public policy of limited liability for corporations in the ordinary case. (*Sonora, supra*, 83 Cal.App.4th at p. 539; *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418 (*Leek*).)

To satisfy the requirement to show something beyond an unsatisfied debt, courts have concluded that inequity would result from failing to pierce the corporate veil if the defendant is insolvent, has no substantial assets to pay a judgment (*Relentless, supra*, 222 Cal.App.4th at pp. 813, 816), or is unlikely to ever have assets to pay a judgment. (*Triyar Hospitality Mgmt.,*

11

*LLC v. WSI (II) – HWP, LLC* (2020) 57 Cal.App.5th 636, 643.) The Fourth

Amended Complaint contains such allegations.[6]

Organic Temecula counters that Organic does have the ability to pay

its debts, pointing out that Organic committed to pay, and did pay, nine

additional months of rent to McKinley after vacating the Temecula store. At

this stage, we assess only the sufficiency of the allegations and not whether

McKinley could prove insolvency or any other allegation regarding Organic's

financial wherewithal.

Organic Temecula further disputes that the alleged transfer of "all" of

Organic's assets to Organic Temecula evinces fraudulent intent or an

inequitable result. Instead, citing *Sonora*, 83 Cal.App.4th at page 539,

Organic Temecula contends, "[a]s a matter of law, an asset transfer made by

another to a business, in the absence of any fraudulent or deceptive intent,

does not support alter ego status."

Organic Temecula extends the holding of *Sonora* too far. As discussed

above, neither fraudulent nor deceptive intent is required to show that

inequity would result from failing to pierce the corporate veil. In *Sonora*, the

parent entity, Diamond, formed a subsidiary, Sonora, to operate a gold mine

in California. (*Sonora, supra*, 83 Cal.App.4th at pp. 530–531, 533.)

Maintaining separate corporate bank accounts, books, annual meetings, and

employees, subsidiary Sonora received loans from parent company Diamond.

(*Id*. at pp. 531, 533.) When Sonora closed the mine, Diamond advanced

money from Diamond's account to Sonora's account so Sonora could pay its

own expenses. (*Id*. at pp. 534, 539.) The court held those advances did not

---

6    In contrast, where there is "nothing to indicate that plaintiffs, if
successful against the corporation, will not be able to collect on any judgment
against the corporation," an inequitable result has not been demonstrated.
(*Leek, supra*, 194 Cal.App.4th at p. 418.) This is not the case here.

demonstrate misconduct or injustice because the transfers between a parent and its subsidiary were not made with fraudulent or deceptive intent. (*Id.* at p. 539.)

While it emphasized the absence of bad intent, the *Sonora* court recognized that the transfers did not prove *either* "misconduct or injustice." (*Sonora, supra,* 83 Cal.App.4th at p. 539.) The court elsewhere acknowledged that the alter ego doctrine requires either "evidence of . . . wrongdoing" by the parent or subsidiary *or* "evidence of injustice" flowing from the recognition of the subsidiary as a separate corporate entity. (*Ibid.*) As discussed above, we view the allegation that Organic transferred its assets to Organic Temecula without consideration, rendering Organic insolvent and unable to pay its obligations to McKinley, sufficient to allege an inequitable result regardless of intent or bad faith.

*Sonora* is factually distinguishable as well. Unlike in *Sonora*, Organic did not advance money or supply long-term loans to Organic Temecula to pay the latter's financial obligations. The Third Amended Complaint alleges that the debt due to Watson was incurred by Organic and Organic's sole shareholder, Cook, at a time when Organic Temecula had no expenses because it did not yet exist. *Sonora* is also distinguishable because it involved a parent company and its subsidiary. Organic Temecula disputes it is a subsidiary of, or has any relationship with, Organic, insisting the two companies are separate entities with entirely severed operations, have no

role in each other's operations, and did not guarantee each other's obligations.[7]

Organic Temecula further argues that Organic's transfer of assets cannot support McKinley's allegation of inequity because debtors can legitimately prefer one creditor over another. But Organic did not transfer its assets to an existing creditor. Organic Temecula was a newly created entity that was owed no money. We therefore find the fraudulent transfer cases inapposite.

The Fourth Amended Complaint additionally alleges the creditor for whose benefit the transfer without consideration was made, Tom Watson, is an insider. McKinley contends these allegations support both the unity of interest and resultant inequality prongs of the alter ego doctrine. Organic Temecula counters that Tom Watson is not an insider. We need not reach this issue because we conclude the other allegations in the proposed Fourth Amended Complaint adequately plead both prongs of the alter ego theory as to Organic Temecula.

B. *Successor Liability*

McKinley raises the additional claim in the Fourth Amended Complaint that the corporate veil should be pierced because Organic Temecula is a successor to Organic and should therefore be liable for

---

[7] Similarly, *Westinghouse Electric Crop. v. Superior Court* (1976) 17 Cal.3d 259 (*Westinghouse*), which Organic Temecula cites for the proposition that the second alter ego prong requires a showing of bad faith, involved a parent and its subsidiary. The court in *Westinghouse* addressed the jurisdictional question whether a parent is subject to suit in a state because of the activities of its wholly owned subsidiary. Notably, in the sentence before the one cited by Organic Temecula, the court reinforced the proposition that either fraud *or* injustice would suffice to meet the second alter ago prong. (*Id.* at p. 274.)

Organic's debt to McKinley.[8]  We assess the allegations as sufficient on this theory and conclude McKinley should have been permitted to amend its complaint to include them.

A successor company is liable for a predecessor's actions if " '(1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) *the purchasing corporation is merely a continuation of the selling corporation*, or (4) the transaction is entered into fraudulently to escape liability for debts.' [Citations.]" (*McClellan, supra*, 89 Cal.App.4th at p. 753, emphasis added by *McClellan*.)  Successor liability is imposed because " '[c]orporations cannot escape liability by a mere change of name or a shift of assets when and where *it is shown that the new corporation is, in reality, but a continuation of the old.*  [This is e]specially . . . well settled when actual fraud or the rights of creditors are involved, under which circumstances the courts uniformly hold the new corporation liable for the debts of the former corporation.' [Citations.]" (*Id.* at p. 754, emphasis added by *McClellan*.)

A company may be a "mere continuation" of a prior company if one or both of the following factual elements are shown:  " '(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations.' [Citations.]" (*Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 29 (*Ray*).)

---

8    Along with alter ego and piercing the corporate veil, successor liability is another way to challenge the fiction of the corporate form.  (*McClellan v. Northridge Park Townhome Owners Ass'n, Inc* (2001) 89 Cal.App.4th 746, 753 (*McClellan*).)  These doctrines all limit "the exercise of the corporate privilege to prevent its abuse [Citations.]."  (*Ibid.*)

The proposed Fourth Amended Complaint newly alleges Organic Temecula continued Organic's former business of operating the Temecula grocery store and is merely Organic reorganized under a new name.  The Fourth Amended Complaint, like the Third, alleges assets were transferred from Organic to Organic Temecula for *no* consideration, satisfying *Ray*'s first requirement to show "no adequate consideration."  (*Ray, supra*, 19 Cal.3d at 29.)  The Fourth Amended Complaint also alleges Cook is the common and sole shareholder, officer, and director of Organic and Organic Temecula, satisfying the second *Ray* element.  These allegations suffice to plead a theory of successor liability against Organic Temecula and the trial court abused its discretion in denying leave to amend in this regard as well.

## DISPOSITION

We reverse the trial court's judgment of dismissal.  We remand and direct the trial court to sustain the demurrer to the Third Amended Complaint and grant McKinley leave to file its Fourth Amended Complaint.  McKinley is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

McCONNELL, P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.