Filed 4/14/26  City Electric Supply Co. v. Patison CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY ELECTRIC SUPPLY COMPANY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JANE M. PATISON et al., <br><br> Defendants and Appellants. | G065298 <br><br> (Super. Ct. No. 30-2021-01216335) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Kimberly A. Knill, Judge. Affirmed.

The Law Office of James D. Cuzzolina and J.D. Cuzzolina for Defendants and Appellants.

Ryan Ellis Law, Ryan A. Ellis and Jennifer R. Lloyd for Plaintiff and Respondent.

Defendants Jane and John Patison appeal from an amended judgment that added them as alter egos of their closely held corporation.[1] They contend the trial court wrongly allowed the postjudgment amendment after they were voluntarily dismissed before trial. They also assert insufficient evidence showed they were alter egos. We disagree and affirm.

FACTS

Plaintiff City Electric Supply Company sued the Patisons, a married couple, and their closely held construction company, JPE Enterprises, Inc. The complaint alleged JPE failed to pay for "electrical materials" and included boilerplate allegations that the Patisons were alter egos of JPE.

Three months before the trial, City Electric voluntarily dismissed the Patisons without prejudice. After a bench trial, the court found for City Electric and entered a judgment against JPE for over $700,000.

Five months later, City Electric successfully moved to amend the judgment to add the Patisons as the alter egos of JPE. (See Code Civ. Proc., § 187.)[2] The trial court found appellants had controlled the litigation "as evidenced by their choice of counsel"; that they "controlled [its] business operations, which led to a unity of interest and ownership such that separate personalities . . . no longer existed"; and that not adding them to the judgment "would lead to an inequitable result."

DISCUSSION

City Electric's pretrial dismissal of the Patisons without prejudice did not prohibit the trial court from later adding them as alter egos.

---

[1] We respectfully use first names sometimes for clarity.

[2] All statutory references are to this code.

2

A "voluntary dismissal without prejudice is not a final judgment on the merits." (*Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869, 879; accord, *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 817, 823 [plaintiff "could have avoided retraxit simply by dismissing his lawsuit without prejudice"].) The Patisons' reliance on cases that involved dismissals *with* prejudice, such as *Basinger v. Rogers & Wells* (1990) 220 Cal.App.3d 16, 21–22, is therefore unhelpful.

Besides, an alter ego is added to a judgment for reasons unrelated to their liability—the doctrine remedies a wrong "separate and distinct" from the underlying cause of action. (*Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1, 7 (*Weinberg*); accord, *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 507 (*Greenspan*).) Naming an alter ego doesn't add a new party in the traditional sense—it "merely insert[s] the correct name of the real defendant." (*Greenspan*, at p. 508 (cleaned up).) To amend a judgment, the plaintiff must show: (1) the alter ego "had control of the previous litigation, and thus were virtually represented"; (2) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (3) "that, if the acts are treated as those of the corporation alone, an inequitable result will follow." (*Id.*, at pp. 508, 511.)

"Res judicata does not bar the amendment of a judgment to add an alter ego as a judgment debtor, even if the issue of alter ego could have been raised earlier, where alter ego liability is separate and distinct from the underlying action." (Ahart, Cal. Practice Guide: Enforcing Judgments and

Debts (The Rutter Group 2025) ¶ 6:1567.2, p. 95.)[3] Courts routinely take parties that were dismissed from the underlying litigation through a variety of procedures and add them postjudgment as alter egos. (See *Weinberg, supra*, 227 Cal.App.4th at p. 6 [demurrer]; *Favila v. Pasquarella* (2021) 65 Cal.App.5th 934, 946–947 (*Favila*) [summary judgment]; *Danko, supra*, 232 Cal.App.4th at pp. 740–741 [directed verdict]; *Greenspan, supra*, 191 Cal.App.4th at p. 528 [arbitration].)

If finding a party not liable prejudgment does not prevent adding it as an alter ego postjudgment, neither should a dismissal without prejudice. The Patisons present no case law holding otherwise, nor do we discern any.

And if parties actually found not liable on the complaint can later be added as alter egos, it should be no bar that City Electric made the boilerplate allegations that the Patisons were JPE's alter egos. "[T]here are good policy reasons not to force a plaintiff to litigate alter ego status in the underlying action." (*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 817.) To be sure, it can be efficient to prove alter ego liability at trial if it is known at that time. (See *Greenspan, supra*, 191 Cal.App.4th at p. 517 [plaintiffs "should probably include alter ego allegations" in the complaint when known before trial]; but see *Relentless Air Racing*, p. 817 ["'Should probably' is not mandatory"].) But it can also "be prudent for a plaintiff to sue only the corporation" and "resort to appropriate postjudgment proceedings" like adding an alter ego only if "problems later arise in satisfying a judgment against the corporation." (*Greenspan*, p. 517.)

---

[3] Res judicata shares the "same" equitable "purpose and goals" as alter ego and is "not meant" to promote "inequitable or unjust results." (*Danko v. O'Reilly* (2014) 232 Cal.App.4th 732, 750 (*Danko*).)

Requiring a plaintiff to litigate alter ego issues prejudgment would needlessly encourage "hypothetical problems" and "fishing expedition[s]." (*Ibid.*)

Nor are we persuaded by the Patisons' reliance on *Jines v. Abarbanel* (1978) 77 Cal.App.3d 702, for two reasons. First, that plaintiff sought "reverse veil piercing" to add a corporation as an alter ego to a judgment against a shareholder, which was unavailable then. (See *Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 222.) Second, the elements of alter ego were not met because there was "no suggestion of any" "abuse of the corporate privilege." (*Jines*, at p. 715.)

Contrary to the Patisons' contention, the trial court's jurisdiction to add alter egos did not expire coterminously with the deadline to vacate a judgment. (See § 473, subd. (b).) "[A]dding an alter ego defendant may be done at any time." (*Favila, supra*, 65 Cal.App.5th at p. 949.)

Substantial evidence also supports the court's findings on the three elements of alter ego liability.

First, on control of the underlying case, the Patisons were named as defendants and appeared in that case. (See *Greenspan, supra*, 191 Cal.App.4th at p. 517 ["By definition . . . section 187 mandates that at least one alter ego individual or entity be a party to the earlier litigation"].) The same lawyer filed one collective answer for the Patisons and JPE. The Patisons later substituted new counsel for themselves but they remained the only shareholders of JPE. Jane was the CEO and president, John was the vice president and secretary—no other officers appear in the record. Jane was deposed as JPE's person most qualified. We see no one else who could control the litigation except for the Patisons, who suggest no other source of control.

Second, on the element of unity, the Patisons were JPE's only two shareholders and Jane conceded commingling funds. She explained "anything

5

that was not business was paid back or counted as additional income for us." She admitted to paying personal expenses with JPE funds such as "Prime Video," "Fitness 19," and "Disneyplus." The evidence also showed other traditional factors supporting alter ego liability—"undercapitalization," stock ownership by family members, and "confusion of the records of the separate entities." (*Greenspan, supra*, 191 Cal.App.4th at p. 513 (cleaned up).)[4]

Third, on the element of injustice, Jane admitted withdrawing $55,000 of JPE's funds to protect it from creditors she deemed invalid.[5] She acknowledged different treatments of creditors, admitting some "final business bills" and all "material suppliers" were paid while other creditors

---

[4] At deposition, Jane agreed a long list of charges on JPE's expense account "were all personal": "Q. Okay. All of these purchases, there's so many on here, I don't even want to start listing them. I assume those were all personal? [¶] . . . [¶] A. Yeah, that may have been a time when I lost my personal debit card and used the business debit card, but it was paid back, and I have records of everything. I have it all -- all recorded. [¶] Q. Okay. How about the Lyft rides, were those business related? [¶] A. We did have to use Lyft for business, yes. [¶] Q. At 1:00 a.m. on a Saturday morning right there on 8-1? [¶] A. I don't know. I don't know. Probably not."

[5] Jane explained at deposition: "Q. . . . And then if you look down under Withdrawals . . . , an online transfer was made to checking 9516. [¶] Do you see that? [¶] A. Yeah, I was being threatened by [a business] to clean out my entire account. [¶] Q. Sorry? [¶] A. And they had no right to. So I probably moved the money to protect the money from them. [¶] Q. So you took the money out of your business accounts and you put it in your personal account. [¶] A. To keep them from taking it. Because they lied to me. They called me and said they were going to sweep our account. I didn't know any better. I didn't have an attorney at the time. [¶] . . . [¶] . . . but it got put back."

like City Electric were not. The court reasonably inferred JPE's preferential treatment of other creditors effected an injustice against City Electric.[6]

Alter ego enforcement "'is an equitable procedure'" and ""'[t]he greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done.'"" (*Greenspan, supra*, 191 Cal.App.4th at p. 508.) "'[E]ven if all the formal elements necessary to establish alter ego liability are not present, an unnamed party may be included as a judgment debtor if "the equities overwhelmingly favor" the amendment and it is necessary to prevent an injustice.'" (*Favila, supra*, 65 Cal.App.5th at p. 942.) We find the trial court permissibly exercised its broad discretion here. (See *Danko, supra*, 232 Cal.App.4th at p. 745 [standard of review].)

---

[6] While the Patisons contend the inequitable conduct must occur postjudgment, we're not so sure. (See *Greenspan, supra*, 191 Cal.App.4th at pp. 527–528 [trial court should have considered prearbitration transactions]; *Weinberg, supra*, 227 Cal.App.4th at pp. 4, 8 [alter ego drained money "in the last 18 months of the corporation's existence," before judgment].)

## DISPOSITION

The judgment is affirmed. City Electric shall recover its costs on appeal.


SCOTT, J.

WE CONCUR:


DELANEY, ACTING P. J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.